IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LARRY NOIAL SELF, Executor of the                                       PLAINTIFF
Estate of NOEL SELF, Deceased

v.                        NO. 3:06-CV-00167 GTE

MICHAEL O. LEAVITT, as Secretary
of the DEPARTMENT OF HEALTH
AND HUMAN SERVICES                                                 DEFENDANT

## ORDER GRANTING MOTION TO DISMISS

Defendant Micheal O. Leavitt, as Secretary of the Department of Health and Human Services ("HHS"), seeks the dismissal of this case for lack of subject matter jurisdiction. Plaintiff Larry Self opposes the motion. After considering the matter, the Court concludes that this case must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

This case involves the Plaintiff's effort to prevent HHS from levying and collecting on a lien on settlement funds paid by Union Pacific Railroad Company ("UP") to resolve a wrongful death action. Noel Self died of injuries sustained in a railroad crossing accident with a train owned by UP. Prior to his death, Mr. Self was treated for injuries incurred in the accident. Medicare paid $114,000 for Mr. Self's medical care.

UP agreed to pay $ 125,000 to resolve a claim by Noel Self's Estate. On March 7, 2005, a hearing was held in the Circuit Court of Craighead County, Probate Division, for the purpose of considering and approving the proposed settlement. A representative of HHS, attorney Annisha M. Tanzie, was given prior notice of the hearing and advised that she should appear if HHS had

- 1 -

any objection to the proposed settlement. HHS was not represented at the hearing.

Following the hearing, the Probate Judge entered a Judgment making the following findings: (1) UP alone contributed the settlement sum, no portion of which came from insurance moneys; (2) the settlement sum was not subject to the lien of HHS; (3) the settlement sum was allocated to damages payable to decedent's children only, who were not made whole by the payment because the damages for grief far exceeded the settlement amount; (4) HHS waived any objections to its findings by failing to appear and defend at the hearing; and (5) neither the State of Arkansas nor HHS had a valid lien upon any portion of the settlement proceeds because the settlement beneficiaries were not made whole. (Judgment, Exh. 1 to Complaint).

On September 13, 2006, Plaintiff Larry Noial Self filed the present Complaint for Declaratory Relief, therein seeking a declaration from this Court that the Defendant has no lien on the settlement sum. In response, HHS filed a motion to dismiss the Complaint for lack of subject matter jurisdiction.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to file a motion to dismiss for "lack of subject matter jurisdiction over the subject matter." In determining whether jurisdiction exists, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990)(citations omitted).

The party invoking the Court's subject matter jurisdiction has the burden to establish that jurisdiction in fact exists. *Id*. If jurisdiction is found to be lacking, the Court is obligated to dismiss the case. Fed. R. Civ. P. 12(h); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999).

**DISCUSSION**

Defendant HHS contends that this action is prematurely filed because Plaintiff has not pursued, much less exhausted, his administrative remedies. Plaintiff concedes that he has not exhausted his administrative remedies, but argues that this case falls within an exception to the exhaustion rule. For the reasons stated below, the Court grants Defendant's motion to dismiss.

**(1) MEDICARE'S SECONDARY PAYER STATUTORY SCHEME**

Congress enacted the Medicare program in 1965 to pay the medical expenses of the elderly, disabled and those suffering from end stage renal failure. 42 U.S.C. §§ 1395 *et seq*. The Medicare program is administered by the Department of Health and Human Services. Prior to 1980, Medicare paid essentially all expenses of eligible participants without regard for whether the recipient was also covered by another health plan. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, § 1862(b), 79 Stat. 286. Beginning in 1980, however, Congress enacted a series of amendments designed to reign in skyrocketing Medicare spending. Collectively, these amendments are referred to as the Medicare Secondary Payer ("MSP") statute or the MSP provisions. 42 U.S.C. § 1395y(b)(codifying amendments); *see New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1374 (Fed. Cir. 1999).

The Medicare Secondary Payer provisions can be described as having two principal directives. First, the MSP provisions direct that Medicare should not make payment under certain circumstances, including when "payment has been or can be expected to be made promptly . . . under a . . . liability insurance policy or plan (including a self-insured plan)." 42 U.S.C. § 13957(b)(2)(A). This provision "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead." *Fanning v. U.S.*, 346 F.3d 386, 389 (3rd Cir. 2003)(quoting *Evanston Hosp. v. Hauck*, 1 F.3d 540, 544 (7th Cir.

1993)(internal quotations omitted)).

Second, the MSP provisions contemplate that if Medicare makes a payment that a primary plan was responsible for, "the payment is considered merely conditional and Medicare is entitled to reimbursement for it." *Fanning*, 346 F.3d at 389; 42 U.S.C. § 1395y(b)(2)(B)(i). Here, HHS contends that UP's payment as a self-insured entity[1] constitutes a payment with respect to medical care for which the Medicare program has already paid, and thus that such payment constitutes a Medicare overpayment by operation of the MSP provisions. See 42 C.F.R. § 405.704(b)(13). Thus, HHS contends, Medicare is entitled to reimbursement directly from the Plaintiff, as the recipient of the settlement proceeds.

**(2)    Contacts between the parties**

Plaintiff has included in its response brief a chronological recitation of his contacts with the Defendant. The Court will not repeat the entire history here. The chronology shows that Plaintiff was aware that HHS was claiming a Medicare lien on the settlement proceeds, that Plaintiff disputed Medicare's right to a lien, that HHS (via Centers for Medicare and Medicaid Services ("CMS")) had actual knowledge of the probate court hearing, that HHS declined to appear or to participate in the hearing, and that the state court probate judge thereafter entered a Judgment decreeing that the settlement proceeds were not subject to the asserted Medicare lien. (See Judgment of June 29, 2006, Exh. 1 to Complaint).

The chronology also indicates that Plaintiff was advised of the administrative procedures for contesting Medicare's lien. On November 21, 2005, Pinnacle Business Solutions, Inc., on behalf of Centers for Medicare and Medicaid Services ("CMS") wrote Plaintiff noting that sixty

---

[1] "An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2).

- 4 -

days had passed since Plaintiff had received the "insurance proceeds" and requesting a check for $114,442.51, made payable to Medicare Services. The letter further advised Plaintiff of the right to appeal the decision. (Pl.'s response at p. 3). Plaintiff elected not t challenge HHS' position administratively.

**(3)   Effect of Failure to Pursue Administrative Review Process**

Defendant argues that the effect of Plaintiff's failure to pursue the administrative review process is to deprive the Court of subject matter jurisdiction. For cause, Defendant points out that Congress expressly limited judicial review of Medicare disputes to the review mechanism provided for in the Medicare statutes. Indeed, it appears that "no action against the United States, the [Secretary] or any officer or employee thereof, shall be brought under § 1331 . . . to recover on any claim arising under" the Medicare Act. 42 U.S.C. § 405(h)(incorporated into 42 U.S.C. § 1395(ii). Numerous courts have construed the statutory scheme to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000)(federal question jurisdiction barred under 28 U.S.C. § 1331, and parties are required instead to proceed through the special review channel that Medicare statutes create); *Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992)(Medicare Act "precludes general federal subject matter jurisdiction until administrative remedies have been exhausted."); *Timmerman v. Thompson*, No. Civ. 03-5221 JRT-FLN, 2004 WL 1765285 (D. Minn. August 5, 2004)(United States' motion to dismiss granted where plaintiffs disputed Medicare's claim to reimbursement from a tort settlement and failed to exhaust their administrative remedies).

Plaintiff argues that his failure to exhaust should be excused. Exhaustion in such circumstance appears to require that three conditions be met: (1) the claimant must raise "a

- 5 -

colorable constitutional claim collateral to his substantive claim of entitlement;" (2) show that "irreparable harm would result from exhaustion; and" (3) show that "the purposes of exhaustion would not be served by requiring further administrative procedures." *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992).

It has not been seriously argued that Plaintiff here has satisfied all three conditions.[2] No constitutional claims have been asserted and it appears that no irreparable harm would result by requiring Plaintiff to exhaust his administrative remedies. Finally, as to the last factor, the test is not exclusively confined to whether exhaustion of administrative remedies will prove futile for the claimant in the sense that he is unlikely to obtain relief as a result. Assuming that Plaintiff will not obtain the relief he seeks from HHS through the administrative process, administrative exhaustion will "still serve the purposes of exhaustion and not be futile in the context of the system. There is no doubt that an administrative record would provide clarification and would help resolve [Plaintiff's] claims in court." *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115-16 (9th Cir. 2003).

To this end, the Court trusts that Plaintiff will now be permitted to go before the administrative agency at this point, albeit belatedly, in order to present his theories and to exhaust his administrative remedies.[3] Plaintiff will then be in a position to pursue the judicial review remedy set forth in 42 U.S.C. § 405(g).

---

[2] There is some question as to whether all three factors must be established conclusively or whether some combination of the elements will justify waiver of the exhaustion requirement. *See Timmerman, supra*, at * 3-4. That issue need not be resolved here.

[3] It is not entirely clear to the Court whether HHS intends to oppose administrative review at this juncture. The Court presumes not and has so presumed in rendering this decision. If this presumption is mistaken, then Plaintiff may move for reconsideration of this Order.

- 6 -

## **CONCLUSION**

For the reasons herein stated, the Court concludes that it lacks subject matter jurisdiction to resolve the merits of Plaintiff's claim. Accordingly,

IT IS THEREFORE ORDERED that Defendant HHS's Motion to Dismiss (docket entry # 3) be, and it is hereby, GRANTED. Plaintiff's Complaint is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this  24th   day of April, 2007.

                                                   /s/Garnett Thomas Eisele
                                                   UNITED STATES DISTRICT JUDGE